UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

RANDY BERKSHIRE,

       Plaintiff,

       Case No. 1:18-cv-949

v.

       Honorable Janet T. Neff

JESSICA HAZEL,

       Defendant.
_____/

## OPINION

This is a civil rights action brought under 42 U.S.C. § 1983 by a person detained in county jail. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint against Defendant Hazel for failure to state a claim.

## Discussion

    I.    Factual Allegations

Plaintiff is presently incarcerated in the Calhoun County Correctional Facility. Based on his complaint and attached documents, it appears that Plaintiff is awaiting trial on a

charge of armed robbery. He has been at the jail since January 9, 2018. Plaintiff sues Calhoun County Sheriffs Department Deputy Jessica Hazel, the classification officer at the jail.

Plaintiff alleges that shortly after he arrived at the jail, he began to challenge the conditions of his confinement by filing grievances though the official grievance procedure on his own behalf and on behalf of others, Iraqi citizens "lacking acclimation to the English language." (Compl., ECF No. 1, PageID.3.)

Defendant Hazel is responsible for assigning inmates to specific housing locations. On March 22, 2018, Plaintiff was moved from Pod F, an assignment Plaintiff characterizes as comparable to administrative segregation, to Pod E. About two weeks later, the jail administrators discovered that Plaintiff was a cooperating witness against an inmate accused of murder. The inmate was also housed in Pod E. Plaintiff was moved out of Pod E and into the classification area. On April 6, 2018, Defendant told Plaintiff he would be going to Pod D and instructed Plaintiff to keep his nose clean. Defendant was never moved to Pod D.

Later that day, Plaintiff handed Defendant an inmate grievance regarding medical billing and two request forms inquiring about separate grievances. Within an hour, Defendant moved Plaintiff from classification to Pod F.

On April 18, 2018, Plaintiff initiated a grievance against Defendant alleging that she placed him in Pod F as a result of retaliatory animus. Plaintiff attaches Defendant's response to his complaint. Defendant stated:

> This letter serves as my response to your grievance dated 4/18/18. Your placement in Pod F is at our discretion and may be done for a variety of reasons. At no time are we required to move you to a different unit. You are eligible for reviews at various times and classification decides whether changing your class level or housing placement is appropriate. You are aware of what is considered in determining you security level. One is a history of past disciplinary issues; which you have; to include Possession of a Weapon in Jail/Prison. Second are past assaultive convictions; which you have. These include 2007 Assault of a Prison

2

Employee and 2008 AWDW. Third are current assaultive charges which you also have. You are currently charged with Armed Robbery. Your class level was overridden by me just to give you an opportunity in general population. Current behavior plays a role but is NOT a one and only determining factor for housing or classification.

You wrote numerous kites and grievances attempting to circumvent the process for review. Despite being told the process, you continued to try and manipulate your situation. I am the classification officer that gave you the chance in Pod E so your theory of me retaliating against you is incorrect. You were removed from Unit E by Sgt. Edmonds while I was not on duty. The reasons for this, I am sure you are well aware of despite your act of being confused. At no time did I feel that Unit D would be a pod for you although while you were in classification we considered all options. Even while in classification you continued to write multiple kites and grievances about ridiculous issues and you attempted to send them to command officers who are not part of the inmate grievance process. You tried to send a grievance to Sheriff Saxton regarding a $3.50 medical charge. Even after I corrected you on the process, you handed in another kite to Sheriff Saxton wanting to know where his response was to another issue. You seem to have no boundaries in your behavior and consistently write kites, complaints and grievances to several staff members of various rank[s] and when not given the answer you want, you continue [to pursue] other avenues. There is an end to your complaints and that is the Shift Commander.

Your classification level was not raised but your actions and pernicious behavior are not what we expect in Pod D. As long as Pod E is not an option, you will remain in Unit F. This grievance will be forwarded to my Sergeant for his/her response.

(April 18, 2018 Inter-Office Memo, ECF No. 1-1, PageID.10.)

Plaintiff complains that Defendant's placement of him in Pod F is punitive. Pod F inmates suffer excessive in-cell confinement, have only restricted access to programs and services, must wear hard restraints when exiting the pod, have limited telecommunications privileges, and suffer enduring invasions of personal privacy. Moreover, Plaintiff suffers from Crohn's disease and Calhoun County has installed timers on inmate toilets that limit the toilets to two flushes per hour.[1] Plaintiff claims that after the second hourly flush he is forced to hold his bowel movements thereby subjecting him to intestinal inflammation and pain.

---

[1] Plaintiff's complaint does not indicate whether the flush-limited toilets are in Pod F only or in all pods.

Plaintiff claims that Defendant placed him in Pod F in retaliation for engaging in activity protected by the First Amendment—filing grievances. Plaintiff also claims that Defendant, by placing Plaintiff in Pod F, is arbitrarily punishing Plaintiff without a legitimate government objective in violation of the Due Process Clause of the Fourteenth Amendment.

Plaintiff asks the Court to enter a declaratory judgment indicating that Defendant has violated his rights, an order compelling Defendant to move Plaintiff to a lower security pod, and award compensatory and punitive damages against Defendant.

II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P.

8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III. Retaliation

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff claims that he was engaged in protected conduct when he filed the medical billing grievance that prompted the response from Defendant quoted above. Presumably, Plaintiff would claim that he was also engaged in protected conduct when he filed the various other

grievances mentioned in his complaint. The filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). However, the right to file grievances is protected only insofar as the grievances are not "frivolous." *Herron*, 203 F.3d at 415. "Abusive or manipulative use of a grievance system would not be protected conduct," *King v. Zamiara*, 680 F.3d 686, 699 (6th Cir. 2012), and an "inmate cannot immunize himself from adverse administrative action by prison officials merely by filing a grievance or a lawsuit and then claiming that everything that happens to him is retaliatory," *Spies v. Voinovich*, 48 F. App'x 520, 525 (6th Cir. 2002). As the Supreme Court held in *Lewis v. Casey*, "[d]epriving someone of a frivolous claim . . . deprives him of nothing at all, except perhaps the punishment of Federal Rule of Civil Procedure 11 sanctions."). Moreover, filing grievances in violation of a rule is not protected conduct. *Thaddeus-X*, 175 F.3d at 394 ("[I]f a prisoner violates a legitimate prison regulation, he is not engaged in 'protected conduct,' and cannot proceed beyond step one" of the three-step retaliation analysis.)

Even if Plaintiff were able to show that one or more of his grievances were properly pursued and not frivolous, his allegations regarding Defendant's retaliatory motive fall short. It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Iqbal*, 556 U.S. at

678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive).

Plaintiff suggests that Defendant's decision to house him in Pod F was retaliatory because of the proximity in time between that decision and Plaintiff's filing of the medical billing grievance. Temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004). The Sixth Circuit has been reluctant to find that temporal proximity between the filing of a grievance and an official's adverse conduct, standing alone, is sufficient to establish a retaliation claim. *Hill v. Lappin*, 630 F.3d 468, 476 (6th Cir. 2010). This is especially true where, as here, the plaintiff is a prolific filer of grievances. *Coleman v. Bowerman*, 474 F. App'x 435, 437 (6th Cir. 2012) (holding that temporal proximity to the filing of a grievance is insufficient because any adverse action "would likely be in 'close temporal proximity' to one of [the plaintiff's] many grievances or grievance interviews").

Here, however, Plaintiff does not rely solely on temporal proximity to support the inference of a retaliatory motive. He claims that the inter-office memo from Defendant, quoted in its entirety above, demonstrates her retaliatory motive.

Plaintiff's reliance on the memo is misplaced; it does not support his claim. In the memo, Defendant notes that Plaintiff has always been properly classified as a Pod F inmate. Defendant, even after Plaintiff filed a number of grievances according to his allegations, moved Plaintiff to a lower security pod. When Plaintiff could no longer remain in that pod, through no

7

apparent fault of his own, she moved him back to the pod that matched his classification. Certainly, the memo evidences that Plaintiff's grievance activity played some role in that decision, but, based on the Defendant's own words—the words upon which Plaintiff relies—Defendant acted based on Plaintiff's complaints outside of the normal grievance process, complaints where Plaintiff ignored the rules. Breaking the rules is not protected conduct. *See Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir. 2008).

Plaintiff's allegations likely fall short with regard to the first step of the *Thaddeus-X* analysis, but they most certainly fall short with respect to the third step. Plaintiff has failed to state a claim for First Amendment retaliation.

IV. Due Process

Plaintiff next claims that Defendant violated his due process rights when she placed him in Pod F. It is not entirely clear whether Plaintiff challenges the process that resulted in his placement in Pod F or simply contends that the conditions there are so bad that it rises to the level of a constitutional violation. The Court will consider both claims.

Pretrial detainees held in jail are protected under the Due Process Clause of the Fourteenth Amendment, which provides that "a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). The Eighth Amendment protections against cruel and unusual punishment afforded to convicted prisoners are considered to be coterminous with the protections afforded pretrial detainees under the Fourteenth Amendment Due Process Clause. *See, e.g., Estate of Carter v. City of Detroit*, 408 F.3d 305, 311 (6th Cir. 2005); *Watkins v. City of Battle Creek*, 273 F.3d 682, 685-86 (6th Cir. 2001); *Thompson v. Cty. of Medina*, 29 F.3d 238, 241 (6th Cir. 1995); *Barber v. City of Salem*, 953 F.2d 232, 235 (6th Cir. 1992); *Roberts v. City of Troy*, 773 F.2d 720, 723

8

(6th Cir. 1985)). Thus, the Court is guided by Eighth Amendment principles in considering Plaintiff's claim regarding the conditions in Pod F.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998).

The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "[E]xtreme deprivations are required to make out a conditions-of-confinement claim. *Hudson v. McMillian,* 503 U.S. 1, 9 (1992) .

To prevail on an Eighth Amendment claim, an inmate must show that he faced a sufficiently serious risk to his health or safety. *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Although it is clear that Plaintiff was denied certain privileges as a result of his placement in Pod F, he does not allege or show that he was denied basic human needs and requirements. The Sixth Circuit has held that without a showing that basic human needs were not met, the denial of privileges as a result of administrative

9

segregation cannot establish an Eighth Amendment violation. *See Evans v. Vinson*, 427 F. App'x 437, 443 (6th Cir. 2011); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008).[2]

To the extent Plaintiff's due process claim is directed at the process that placed him in Pod F, the Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano,* 427 U.S. 215, 225 (1976). In *Sandin v. Conner,* 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a prisoner's loss of liberty implicates a federally cognizable liberty interest protected by the Due Process Clause. According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when a deprivation "will inevitably affect the duration of his sentence" or imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 486-87; *see also Jones v. Baker,* 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown,* 62 F.3d 789, 790-91 (6th Cir. 1995).

Confinement in administrative segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 467-73 (1983). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin,* 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden–Bey v. Rutter*, 524 F.3d 789, 794 (6th. Cir. 2008).

---

[2] To prevail as a convicted prisoner under the Eighth Amendment Plaintiff would also have to demonstrate a subjective component—that Defendant Hazel deprived him of his basic human needs with a sufficiently culpable state of mind. A prison official cannot be found liable unless the official has acted with deliberate indifference; that is, the official must know of and disregard an excessive risk to inmate health or safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991) (deliberate indifference standard applies to all claims challenging conditions of confinement to determine whether defendants acted wantonly). A recent Sixth Circuit case suggests that, in that regard, the protections afforded convicted prisoners and those afforded pretrial detainees may not be as coterminous as they used to be. *See Richmond v. Huq*, 885 F.3d 928, 937-38 n.3 (6th Cir. 2018) (citing *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015)). Pretrial detainees may have broader protection in that they may not be required to show the defendant's subjective intent. *Id*. Here, the distinction is not material because Plaintiff cannot show the objective component—a requirement under the Eighth Amendment **and** the Fourteenth Amendment.

In *Sandin*, the Supreme Court concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship. *Sandin,* 515 U.S. at 484. Similarly, the Sixth Circuit has held that mere placement in administrative segregation, and placement for a relatively short period of time, do not require the protections of due process. *Rimmer-Bey,* 62 F.3d at 790-91; *see Joseph,* 410 F. App'x at 868 (61 days in segregation is not atypical and significant). The Sixth Circuit has also held, in specific circumstances, that confinement in segregation for a relatively long period of time does not implicate a liberty interest. *See, e.g.*, *Baker,* 155 F.3d at 812-23 (two years of segregation while the inmate was investigated for the murder of a prison guard in a riot); *Mackey v. Dyke,* 111 F.3d 460 (6th Cir. 1997) (one year of segregation following convictions for possession of illegal contraband and assault, including a 117-day delay in reclassification due to prison crowding). *But cf. Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty interest); *Harden-Bey,* 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, *i.e.*, three years without an explanation from prison officials, implicates a liberty interest); *Harris v. Caruso,* 465 F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest). The time periods at issue here do not rise to the level of significant and atypical deprivations. Accordingly, Plaintiff has failed to state a due process claim.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendant Hazel will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:   October 16, 2018             /s/ Janet T. Neff
                                      Janet T. Neff
                                      United States District Judge